[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: HEALTH INSURANCE AND VISITATION
The marriage of the parties was dissolved December 7, 1984, and the decree provided for joint custody of the minor children; Evan, born October 6, 1974; and Tasha, born April 22, 1979; the children's primary residence to be with plaintiff mother; and the defendant father to have interim reasonable rights of visitation as set forth; visitation was referred to Family Relations for mediation.
On April 1, 1985, the judgment was modified to provide visitation in accord with the recommendation of Family Relations, excepting that father was not to exercise visitation during the week immediately before the summer school break begins and the week immediately after it ends. Then, on August 24, 1987, interim custody of Evan was granted to father, and interim custody of Tasha to mother; and, on September 21, 1987, orders were entered confirming the interim custody orders, and modifying the visitation schedule concerning both children. A written stipulation reflecting the revised visitation schedule agreed upon on September 21, 1987 was prepared and belatedly filed in this court on April 4, 1988.
Numerous miscellaneous motions were filed during the course of these proceedings, and the parties are now at issue on motions for contempt and for attorney's fees, relating to denial of visitation rights and to a claim for reimbursement of health insurance premiums, which this Court partially heard on March 4, 1991, and ordered the parties to draft a General Statutes Section 46b-84c order regarding health insurance and CT Page 3959 processing of benefits. The Court further requested the defendant to file a motion to modify or clarify his visitation rights, and the plaintiff also filed a motion to open and modify custody and visitation, and the Court heard testimony and received evidence on the insurance claim and the rights of visitation with respect to Tasha.
I. Insurance Claim
The father claims that during the period from 1983 to 1987, he reimbursed mother a total of $168 in premiums for his one-half share of health insurance for the minor children, which insurance he later learned was provided to mother by her employer at no cost to her. He also claims that he was compelled to spend $55 for health insurance premiums for Evan as a result of mother's cancellation of Evan's coverage, and seeks reimbursement from mother of $223 less a credit to her of $97. He calculates this credit amount on the basis that his share of the monthly health insurance premium which mother is now paying is $5.65, which for the 17 months from September 1989 through April 1991, comes to $97, rounded off, as he concedes he has not reimbursed mother for the premiums over this period. He further claims that as the monthly premium for the family coverage (covering mother, Tasha and Evan) is $27.43,[1] and for the `double' coverage (covering mother and one dependent child) is $21.78, he ought to be responsible only for the monthly difference of $5.65. See Defendant's Exhibit 3; Plaintiff's Exhibit B. The plaintiff argues, on the other hand, that because Evan is not now residing with her, he cannot be covered under her present husband's health insurance policy (which provides broader benefits through the same employer) and she was therefore compelled to purchase and provide the family coverage so as to include Evan, and claims that the defendant's portion of the monthly premium should be the entire premium of $27.43. Since this dual coverage provides some broader benefits to the plaintiff, and no evidence was provided allocating the monthly premium cost among the three insureds, the Court deems that it would be fair and equitable that the annual premium of $274.30 be equally divided, so that father's share shall be one-half thereof, $137.15 per year ($11.43 a month), plus one-half of any future increases.
As to the arrearage claims, father has not proven his claim that the $55 he spent was necessary. Also, mother claimed that in any event an accord and satisfaction was reached on an earlier date, when father agreed to waiving his claim for reimbursement in exchange for mother waiving her claim for an arrearage due her. When considering that both parties were at all times represented by capable counsel, that CT Page 3960 an eight-page comprehensive separation agreement was entered into, that a detailed stipulation containing numerous visitation provisions was prepared and executed by the parties and that mother's counsel candidly conceded in argument that she had no documentation to corroborate her client's claim, it does not seem probable that such an accord and satisfaction would not be in writing, and therefore the Court finds that she has not met her burden of proof, and ought to reimburse the defendant in the amount of $168 subject to credits as hereinafter ordered.
 II. Jewish Holidays and Summer Vacation Visitation
A. Jewish Holidays
The relevant portion of the visitation orders is that father shall have visitation with Tasha "on all major Jewish holidays at times that are mutually agreeable." He claims that since this provision was ordered, he has enjoyed visitation on Passover and Chanukah, but has been denied visitation during Rosh Hashanah and Yom Kippur.
He claims that the latter two are among the major holidays and he seeks visitation from 5 p. m. on the eve of Yom Kippur until the morning of the day after and the same visitation period embracing one of the Rosh Hashanah days. Mother apparently originally claimed that Yom Kippur and Rosh Hashanah were not included within the meaning of "major Jewish holidays," but during the hearing, had no objection to the father visiting during these holidays. However, she conditioned her stance on the premise that father's other visitation rights ought to be curtailed or eliminated. She points out that due to the child's expanded activities, jazz dance, clarinet lessons, friends, starting junior high school in the fall, etc., the alternate Wednesday visitation ought to be terminated, the alternate weekend visitation should be curtailed to begin Saturday mornings and end Sunday evenings, and that Monday holidays not be added to his weekends.
There is no doubt that Yom Kippur and Rosh Hashanah are major Jewish holidays. In fact, they are often referred to as the high holy days. When construing a provision of the judgment founded upon an agreement, the Court must look to the intent of the parties and the common meanings of the words used. The Court therefore finds from the parties' testimony, that their intent, clearly expressed, was to include Yom Kippur and Rosh Hashanah, together with Passover and Chanukah as the "major Jewish holidays." CT Page 3961
B. Summer Vacation
Father claims that mother interfered with father's 1990 summer weekend and Wednesday visitation and threatens to do so again by scheduling Tasha for two weeks at summer camp from July 14 to July 26, 1991. The mother claims that her scheduling ability is extremely limited because she has Evan for the first three weeks of July, wants to have both children together when she and her husband take a vacation; that Evan is at the same summer camp as a "counsellor trainee," and that Tasha has a special friend who will be with her at camp the above two weeks, and that she and Tasha need some time together to prepare for father's visitation the first three weeks of August.
The Court, after hearing the parties, and considering the relevant statutory factors and orders presently in effect, enters the following orders:
(1) That father owes mother for unpaid health insurance premiums in the sum of $194.31 (17 months at $11.43 per month), and when offset against father's credit of $168, this leaves a balance due mother of $26.31, to be paid within thirty days. Father is to continue to reimburse mother for one-half the annual premium actually paid by her for her family coverage, plus any increases thereon, in equal monthly payments commencing May 1991.
(2) That father shall have visitation rights with Tasha Yom Kippur night and Rosh Hashanah eve, from 3 p. m., the time school lets out (or at the conclusion of Tasha's extracurricular activities, if applicable) until 10 p. m. This is in addition to the Passover and Chanukah visitation he currently enjoys. If Tasha does not attend school on the days of Yom Kippur and/or Rosh Hashanah, then father's visitation shall commence at 9 a.m. on Yom Kippur day and be overnight on Rosh Hashanah eve until 5 p. m. on Rosh Hashanah day.
(3) That father shall have visitation rights with Tasha from 9 a.m., July 29, 1991 through July 31, 1991, in view of his alternate weekend and Wednesday visitation for July 26-28 and July 31. This is in addition to his first three weeks of August. No order is made with respect to future summers in light of the order entered in (4) below.
(4) With respect to mother's claims that father's visitation rights be reduced, the Court orders that this be referred to Family Relations for study and recommendation. The study shall include at least two in person interviews with the child, each parent to bring the child to one interview. CT Page 3962
"In making or modifying any order with respect to. . . visitation, the court shall be guided by the best interests of the child, giving consideration to the wishes of the child if he is of sufficient age and capable of forming an intelligent preference. . . ." General Statutes Section 46b-56(b) (emphasis added).
The Court also suggests that as the already detailed and complex visitation schedule presently in effect has been modified several times, counsel, for the benefit of all concerned should consolidate the present orders into a single document.
Teller, J.